# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

-------------------------------------------------------------------X

JOHN DOE,                                          :
                                                   :    **Civil Action No:**
                   **Plaintiff,**                  :
                                                   :
                                                   :
         **-against-**                             :
                                                   :
                                                   :
**DORDT UNIVERSITY** f/k/a/ **DORDT COLLEGE**;     :
**DORDT UNIVERSITY BOARD OF TRUSTEES**;            :
**HOWARD WILSON**, individually and as agent for   :
Dordt University; **ROBERT TAYLOR**, individually  :
and as agent for Dordt University; **DEREK BUTEYN**, :
individually and as agent for Dordt University;    :
and **ERIN OLSON**, individually and as agent for  :
Dordt University;                                  :
                                                   :
                   **Defendants.**                 :

-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER
## <u>PSEUDONYM AND FOR PROTECTIVE ORDER</u>

**NESENOFF & MILTENBERG, LLP**          **BABICH GOLDMAN, P.C.**
**363 Seventh Avenue, Fifth Floor**     **501 SW Seventh Street, Suite J**
**New York, New York 10001**            **Des Moines, Iowa 50309**
**(212) 736-4500**                      **(515) 309-6850**

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 6

STATEMENT OF FACTS .......................................................................................... 6

ARGUMENT ................................................................................................................ 9

    I.    Legal Standards. ............................................................................................ 9

    II.   A Consensus Among the Courts. ................................................................ 12

    III.  Plaintiff's Interest in Remaining Anonymous Outweighs the Need for Public
           Disclosure. ............................................................................................... 14

        a.      The Litigation Involves Matters That Are Highly Sensitive and of a
               Personal Nature. ............................................................................... 15

        b.      Disclosure of Plaintiff's Identity would Pose a Substantial Risk of
               Harm, Including the Very Damage Plaintiff Seeks to Avoid by Way of
               This Action. ..................................................................................... 16

        c.      The Suit is Challenging the Actions of a Partially Federally-Funded
               University. ....................................................................................... 22

        d.      Defendants Are Not Prejudiced by Allowing Plaintiff to Press His
               Claims Anonymously. ...................................................................... 23

        e.      The Plaintiff Has Sought to Keep his Identity Confidential. ........... 24

        f.      The Public's Interest in the Litigation is not Furthered by Requiring
               Plaintiff to Disclose His Identity, and There is a Weak Public Interest
               in Knowing Plaintiff's Identity. ...................................................... 24

        g.      Plaintiff Could Face Criminal Prosecution. .................................... 25

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**                                                                                                                    **Page**

*Capers v. Nat'l R.R. Passenger Corp.*, 673 Fed. Appx. 591 (8th Cir. 2016) .......................................... 5

*Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) ............................................................ 10, 18, 20

*Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) ......................................................................... 8, 14, 15

*Doe v. Allegheny College*, Docket No. 17-cv-00031 (W.D.Pa. May 1, 2017) ...................................... 9

*Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 202 n.1 (D. Mass. 2017) .................................................. 8

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)............................................................................................ 7

*Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016) .............................................................. 8

*Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016)....................................................................... 8

*Doe v. Carengie Mellon Univ.*, Docket No. 17-CV-01574 (W.D. Pa. Dec. 6, 2017)............................ 9

*Doe v. Colgate Univ.*, 15–CV–1069 (LEK) (DEP), 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016)...... 7

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)............................................................................... 7

*Doe v. Cummins*, 662 Fed. Appx. 437, 445 (6th Cir. 2016) ................................................................ 15

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006) ........................................................................... 18, 19

*Doe v. George Washington Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018)................................................. 8

*Doe v. George Washington Univ.*, Docket No. 11-cv-00696-RLW (D.D.C. Apr. 8, 2011)................... 9

*Doe v. Grinnell Coll.*, No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017) .................... 5, 7, 18

*Doe v. Hartz*, 52 F. Supp. 2d 1027 (N.D. Iowa 1999) ....................................................................... 4, 5

*Doe v. McCarthy*, No. 19-CV-00096 (RGE) (CFB) (S.D. Iowa July 3, 2019) ...................................... 5

*Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011) ....................................................................................... 6

*Doe v. Middlebury*. No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015)...................... 8

*Doe v. Penzato*, 10-CV-5154 (MEJ), 2011 WL 1833007 (N.D. Cal. May 13, 2011) ......................... 10

*Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 622 (E.D. Va. 2016) ..... 14, 15

*Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015)................................................................. 9

Case 5:19-cv-04082-CJW-KEM   Document 2-11   Filed 12/05/19   Page 3 of 26

*Doe v. Sioux City Cmty. Sch. Dist.*, No. 15-CV-04246 (MWB) (LTS) (N.D. Iowa Dec. 29, 2015) ...... 5

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) ................................................................ 10, 20

*Doe v. Swarthmore College*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014) .................................... 9

*Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 805 (E.D. Pa. 2017)............. 8

*Doe v. Trustees of Dartmouth Coll.*, Docket No. 18-CV-040-LM, 2018 WL 2048385

    (D.N.H. May 2, 2018) ................................................................................ 16

*Doe v. Univ. of Colorado*, Docket No. 14-cv-03027 (D. Colo. Nov. 13, 2014).................................... 9

*Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ........................................................ 16

*Doe v. Univ. of S. Florida Bd. of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753

    (M.D. Fla. 2015) ................................................................................... 8

*Doe v. Univ. of S.C.,* No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045 (D.S.C. Feb. 12, 2018) ......... 8

*Doe v. Univ. of Scis.*, Docket No. 19-cv-00358, 2019 WL 632022, at \*1 (E.D. Pa. Feb. 14, 2019)...... 7

*Doe v. Univ. of St. Thomas*, Docket No. 16-CV-1127, 2016 WL 9307609

    (D. Minn. May 25, 2016) ............................................................................ 8,16

*Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009)........................................... 9

*Doe v. Virginia Polytechnic Inst. & State Univ.*, Docket No. 18-CV-170, 2018 WL 5929647

    (W.D. Va. Nov. 13, 2018)........................................................................... 16

*Doe v. Washington & Lee Univ.,* No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ..... 9

*Doe v. Williams Coll.*, Docket No. 13-cv-11740 (D. Mass. Sept. 5, 2013) ...................................... 9

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)................................... 18

*EW v. New York Blood Ctr.,* 213 F.R.D. 108 (E.D.N.Y. 2003)................................................... 9, 17

*Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F. Supp. 1249 (N.D. Iowa 1995) ................. 4, 5

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008)........................................... 5, 6, 10

*W.N.J. v. Yocom*, 257 F.3d 1171 (10th Cir. 2001) ......................................................... 5, 10

iv

## STATUTES

Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g ......................................... 19

## RULES

Federal Rule of Civil Procedure 10(a) .................................................................................... 4

## OTHER AUTHORITIES

Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times (Dec. 21, 2014) https://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html .......................................................................................................... 13

Brian Stelter and Tom Kludt, *NBC Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior'*, CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL ............................................................................................ 12

Carlsen et al., *#MeToo Brought Down 201 Powerful Men. Nearly Half of Their Replacements are Women*, N.Y. Times, (Oct. 29, 2018), https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html .................... 12

Cathy Young, *Exclusive: Brown University Student Speaks Out on What It's Like to Be Accused of Rape*, Daily Beast (June 8, 2014), https://www.thedailybeast.com/exclusive-brownuniversity-student-speaks-out-on-what-its-like-to-be-accused-of-rape .................................................... 14

*CBS News Fires Charlie Rose After Sexual Misconduct Allegations*, CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexual-misconduct-allegations/12

Jon Hyman, Esq., *Sexual Harassment is the Hiring Scarlet Letter*, Workforce.com (Feb. 8, 2018), available at https://www.workforce.com/2018/02/08/sexual-harassment-hiring-scarlet-letter/11

Mitchell Byars, *Protests at CU set for Monday as Student Charged in Rape*, Boulder Daily Camera (Mar. 14, 2019) https://www.dailycamera.com/2019/03/14/protests-at-cu-set-for-monday-as-student-charged-in-rape/ ........................................................................................ 13

Patrick Witt, *A Sexual Harassment Policy that Nearly Ruined My Life*, Boston Globe (Nov. 3, 2014), https://www.bostonglobe.com/opinion/2014/11/03/sexual-harassment-policy-that-nearly-ruinedlife/hY3XrZrOdXjvX2SSvuciPN/story.html ............................................................... 13

Richard Adams, *Warwick University Says Rape Threat Pair Won't Return*, Guardian (Feb. 4, 2019) https://www.theguardian.com/education/2019/feb/05/warwick-university-says-threat-pair-wont-return .................................................................................................................. 14

Case 5:19-cv-04082-CJW-KEM   Document 2-11   Filed 12/05/19   Page 5 of 26

## INTRODUCTION

Plaintiff, by his attorneys, Nesenoff & Miltenberg, LLP, and Babich Goldman, P.C., hereby respectfully requests this Court to: (i) permit Plaintiff to proceed in the above-captioned matter under the pseudonym John Doe, and to similarly permit Plaintiff to identify other non-parties to this litigation by pseudonym; and (ii) issue a protective order precluding Defendants from disclosing Plaintiff's identity, through court filings or otherwise.  In light of the private, sensitive, and highly personal nature of the allegations contained in the Complaint, the risk that identifying Plaintiff would subject him to the precise harm he is seeking to avoid by way of this action, the minimal public interest in learning Plaintiff's identity, and the absence of prejudice to Defendants, Plaintiff's identity should not be disclosed to the public.  Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

The facts underlying this litigation are set forth fully in Plaintiff's Complaint (ECF No. 1), filed simultaneously with this motion.  In summary, the relevant facts are as follows:

Plaintiff, a male undergraduate student at Dordt University ("Dordt" or "the University"), was falsely accused, in the final semester of his senior year, of sexually assaulting fellow Dordt student, Jane Roe,[1] in violation of Dordt's student conduct code.  (Compl. ¶¶ 1-2, 125).  The claim arose out of an encounter between Plaintiff and Roe, wherein both parties consumed alcohol and engaged in consensual sexual activity, which was undisputedly initiated by Roe (Compl. ¶¶ 88-104).   Approximately a week later, Plaintiff was ambushed at his teaching assistant job by Defendants Buteyn and Taylor, who insisted that Plaintiff accompany them to Taylor's office

---

[1] Jane Roe is a pseudonym.

without explanation. (Compl. ¶ 114). In Taylor's office, Plaintiff was told that "there is a Title IX investigation that mentioned your name," but was not expressly told that he was a respondent, nor what the allegations were. Buteyn and Taylor provided no substantive information about Dordt's Title IX process, nor the alleged policy violations. Instead, they simply told Plaintiff that he should be concerned about the involvement of alcohol, because "that's what the law says" and that he needed to speak with the police if they contacted him. At no point did Defendants advise Plaintiff he had a right to an advisor. (Compl. ¶¶ 115-120).

Plaintiff heard nothing further about the allegations until two months later, when he received a summary notice from Defendant Wilson that he was required to attend a hearing the next day before the "Student Life Committee." Once again, Plaintiff was not provided notice of the allegations against him, any relevant procedures or rules, or the members of the committee. He was not informed of any investigation, investigative reports, evidence, or witnesses. (Compl. ¶¶ 123-126).

At the "hearing," Plaintiff was prohibited from presenting an argument in his defense or asking questions of any witnesses. On information and belief, neither Roe nor any other witness attended the hearing. The "hearing" consisted of little more than Plaintiff being asked leading and accusatory questions and then dismissed. (Compl. ¶¶ 127-129). A few minutes after being dismissed, Plaintiff was handed a typed-up report titled "Title IX Incident Review and Finding by Howard Wilson, Title IX Coordinator." The report had clearly been written before the hearing, made no reference to the hearing or the committee, made no credibility assessments, and expressly stated that all decisions were made by Dordt's Title IX coordinator based on his personal judgment. (Compl. ¶¶ 133-140). According to the letter, Defendant Wilson determined that Plaintiff was responsible for three conduct policy violations: Misuse of Alcohol, Sexual Misconduct, and Sexual

7

Assault. Defendant Wilson determined that the sanction would be dismissal. According to the letter, the Sanction would be imposed immediately, even though Plaintiff had a right to appeal, and even though it was the last few weeks of Plaintiff's final semester of his senior year. In other words, even if Plaintiff succeeded on his appeal, the immediate imposition of the Sanction guaranteed that Plaintiff would not graduate on time. (Compl. ¶¶ 142-143, 146-147).

Indeed, Defendants deliberately and inexplicably held up Plaintiff's appeal for a month, ensuring that he did not graduate. Throughout this time, Dordt deliberately misled Plaintiff about his rights, the school's obligations, and blatantly retaliated against Plaintiff for his professed intention to file a lawsuit regarding the gender-biased treatment he had been subjected to. Once the date of Plaintiff's class graduation passed and his fate was therefore sealed, Dordt summarily rejected Plaintiff's appeal without explanation. (Compl. ¶¶ 155-182). After Plaintiff's dismissal from Dordt, he was unable to obtain admission to another university to complete his degree. He had no choice but to wait out the dismissal period and reapply to Dordt.

Unsurprisingly, Dordt's handling of Plaintiff's readmission process was wildly improper, including Defendants' express, unabashed statements that Plaintiff's readmission was directly tied to whether he was going to pursue a Title IX lawsuit against Dordt. When Plaintiff refused to sign his rights away, Defendants retaliated against him by denying him a full readmission and forcing him to forfeit a multi-thousand dollar tuition credit. (Compl. ¶¶ 188-225). To this day, Plaintiff's academic and disciplinary file carry the false and damaging findings resulting from Dordt's flawed and unlawful process.

Through this action, Plaintiff seeks, *inter alia*, an order directing Dordt to set aside the decision finding him responsible for sexual assault and to have the record of dismissal expunged from his transcript. Without appropriate redress, the unjustified decision and sanction will

8

continue to cause irreversible damage to Plaintiff's reputation, education, and future career. These efforts will prove elusive if Plaintiff is forced to proceed under his own name, as the entire purpose of the suit is to dissociate Plaintiff's name from the false and damaging allegations and finding of sexual assault. Accordingly, Plaintiff seeks to proceed pseudonymously.

## ARGUMENT

### I. Legal Standards.

Federal Rule of Civil Procedure 10(a) generally requires the identification of all parties to an action. However, federal courts "have increasingly recognized an exception to this requirement in limited 'matters of a sensitive and highly personal nature.'" *Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F. Supp. 1249, 1255 (N.D. Iowa 1995) (citation omitted). Typical cases permitting pseudonymous plaintiffs include plaintiffs who face "social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Ibid.* While neither the Supreme Court nor the Eighth Circuit has set forth express guidance for evaluating such motions, courts across the country have identified certain factors relevant to such consideration, which this court has previously referenced in deciding pseudonym motions. *See, e.g., id.* (citing cases from Fourth, Fifth, and Eleventh Circuit courts, as well as district court decisions in New York, Rhode Island, Alabama, and Mississippi); *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1046 (N.D. Iowa 1999) (citing cases from Fourth, Fifth and Eleventh Circuits). "The ultimate test, however, remains whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Hartz*, 52 F. Supp. 2d at 1047 (quotation marks and citation omitted). As the Tenth Circuit has noted, a "plaintiffs' interest in keeping their sexual habits from public scrutiny" may suffice as a substantial privacy interest permitting pseudonymous litigation. *W.N.J.*

*v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (cited in *Capers v. Nat'l R.R. Passenger Corp.*, 673 Fed. Appx. 591, 593 (8th Cir. 2016)).

Factors identified by this district court in assessing a plaintiff's request to proceed anonymously include: (i) whether plaintiff is challenging governmental activity; (ii) whether plaintiff will be required to disclose "information of the utmost intimacy;" (ii) whether plaintiff may be compelled to admit illegal conduct, thereby risking criminal prosecution; (iv) whether disclosure would subject plaintiff to social stigmatization; (v) whether plaintiff would risk injury if identified; (vi) whether the injury litigation against may be incurred by disclosure; (vii) whether defendant will be prejudiced by permitting plaintiff to proceed by pseudonym; (viii) the extent to which the litigant's identity has been kept confidential thus far; (ix) whether, because of the purely legal nature of the claims at issue, there is an atypically weak interest in knowing the litigant's identity; and (x) whether the interests of children are at stake. *See Heather K.*, 887 F. Supp. at 1255-56; *Hartz*, 52 F. Supp. 2d at 1046-47. *See also Doe v. Sioux City Cmty. Sch. Dist.*, No. 15-CV-04246 (MWB) (LTS) (N.D. Iowa Dec. 29, 2015), ECF No. 12 (granting pseudonym status to student plaintiff under *Hartz* factors).

The Southern District of Iowa has also considered, and granted pseudonym motions based upon a similar list of "non-exhaustive" factors set forth in a Second Circuit case, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008). *See Doe v. Grinnell Coll.*, No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017), ECF No. 39; *Doe v. McCarthy*, No. 19-CV-00096 (RGE) (CFB) (S.D. Iowa July 3, 2019), ECF No. 6. These factors include:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated

against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 189-190 (alterations in original) (internal quotations and citations omitted).

The Third Circuit has also adopted a similar list of factors to consider:

(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically week public interest in knowing the litigant[s'] identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives. . . . [Plus] (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is []legitimately motivated.

*Doe v. Megless*, 654 F.3d 404, 409 (3d Cir. 2011) (quoting *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467-68 (E.D.Pa.1997)).

Thus, although the Eighth Circuit has not yet adopted its own unique standard for reviewing pseudonym motions, a review of the case law reveals that the same common factors appear time and again, regardless of jurisdiction. As will be explained in further detail below, an evaluation of these relevant factors in this case militates in favor of permitting Plaintiff to proceed pseudonymously.

## II. A Consensus Among the Courts.

As an initial matter, a majority of courts around the country to address this issue have routinely permitted plaintiffs similarly situated to John Doe—students wrongly found responsible by their colleges and universities for sexual misconduct—to proceed by pseudonym, acknowledging the great danger such plaintiffs face in proceeding under their own names, and the futility of these lawsuits if the allegations will be forever publicly associated with plaintiffs' names. As the District Court for the Northern District of New York explained, "protecting the anonymity of sexual assault victims <u>and</u> those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected." *Doe v. Colgate Univ.*, 15–CV–1069 (LEK) (DEP), 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) (emphasis added).

Courts granting plaintiffs like John Doe anonymity in pursuing actions against their schools include: *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018) (student found responsible for sexual misconduct); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (student found responsible for sexual misconduct); *Doe v. Grinnell Coll.*, No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017), ECF No. 39 (finding "the determinative factor here is that disclosure of plaintiff's identity would cause the injury litigated against to be incurred as a result of the disclosure"); *Doe v. Univ. of Scis.*, Docket No. 19-cv-00358, 2019 WL 632022, at *1 (E.D. Pa. Feb. 14, 2019) (plaintiff permitted to proceed as John Doe without formal motion practice); *Doe v. George Washington*

*Univ.*, 321 F. Supp. 3d 118 (D.D.C. 2018) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Univ. of S.C.,* No. 18-CV-161 (TLW) (PJG), 2018 WL 1215045, at *1 (D.S.C. Feb. 12, 2018) ("Doe has demonstrated compelling interests in anonymity in this matter because of the personal and sensitive nature of the underlying facts of this case, which involve allegations of sexual assault."), *report and recommendation adopted*, 2018 WL 1182508 (D.S.C. Mar. 6, 2018); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799, 805 (E.D. Pa. 2017) (plaintiff student found responsible for sexual assault in university Title IX proceeding); *Doe v. Amherst Coll.*, 238 F. Supp. 195, 202 n.1 (D. Mass. 2017) (noting court had previously granted plaintiff's pseudonym motion, where plaintiff student was found responsible for sexual misconduct in school Title IX proceeding); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016) (plaintiff student found responsible for sexual assault permitted to proceed as John Doe); *Doe v. Univ. of St. Thomas*, No. 16-CV-1127(ADM) (KMM), 2016 WL 9307609, at *2 (D. Minn. May 25, 2016) ("In cases involving intensely personal matters, the normal practice of disclosing the parties' identities yields to a policy of protecting privacy. . . . The complaint and its supporting documents describe very private sexual acts, whether consensual or not, between two young college students, and it is difficult to imagine any resolution of this case without further exploration of truly intimate matters." (citations omitted)); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016) (student found responsible for sexual assault); *Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016) (granting motion to proceed as pseudonym by student found responsible for sexual misconduct); *Doe v. Middlebury*. No. 15-CV-192 (JGM), 2015 WL 5488109 (D.Vt. Sept. 16, 2015) (student found responsible for sexual misconduct); *Doe v. Univ. of S. Florida Bd. of Trustees*, 15-CV-682-T-30 (EAJ), 2015 WL 3453753 (M.D. Fla. 2015) (student accused of battery, threats, and violence against girlfriend); *Doe v. Salisbury Univ.*, 107

13

F. Supp. 3d 481 (D. Md. 2015) (student accused of sexual assault); *Doe v. Washington & Lee Univ.,* No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) (student expelled after finding of nonconsensual intercourse); *EW v. New York Blood Ctr.,* 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[M]any courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm."); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009) (student found responsible for sexual misconduct); *Doe v. Carengie Mellon Univ.*, No. 17-CV-01574 (W.D. Pa. Dec. 6, 2017), ECF No. 13 (granting plaintiff's motion to proceed by pseudonym); *Doe v. Allegheny College*, Docket No. 17-cv-00031 (W.D.Pa. May 1, 2017), ECF No. 18 (granting plaintiff's motion to proceed by pseudonym); *Doe v. Univ. of Colorado*, No. 14-cv-03027 (D. Colo. Nov. 13, 2014) ECF No. 12 (granting plaintiff's motion to restrict access to "any documents containing information that may serve to identify the Plaintiff"); *Doe v. Swarthmore College*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014), ECF Doc. No. 3 (applying *Megless* factors and finding the balance in favor of anonymity "compelling"); *Doe v. Williams Coll.*, Docket No. 13-cv-11740 (D. Mass. Sept. 5, 2013), ECF No. 12 (granting motion to proceed pseudonymously and for protective order); *Doe v. George Washington Univ*., Docket No. 11-cv-00696-RLW (D.D.C. Apr. 8, 2011), ECF No. 2 (granting motion to proceed under pseudonym).

In light of the majority holdings across the country, Plaintiff respectfully submits the instant case should follow suit and Plaintiff should be permitted to proceed by pseudonym.

**III. Plaintiff's Interest in Remaining Anonymous Outweighs the Need for Public Disclosure.**

### a. The Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature.

As set forth above, the Complaint focuses on the intimate sexual activities of Plaintiff and other pseudonymously-named students while enrolled at Dordt University. Matters of a sexual nature—specifically, allegations of sexual assault—are generally considered highly sensitive and personal. *Yocom*, 257 F.3d at 1172; *Sealed Plaintiff*, 537 F.3d at 189. Moreover, Dordt is an extremely small school, with an enrollment of approximately 1500 students. Identifying Plaintiff by name would, almost assuredly, also indirectly reveal Roe's true identity, as well as the identities of the other non-party students. And, while Doe vehemently denies that he assaulted Roe, the fact remains that Dordt labeled Roe as a victim of sexual assault, and thus disclosure of her identity would be unduly intrusive, particularly where she is not a party to the litigation. *See generally*, *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (permitting individuals alleging sexual assault to remain anonymous); *Doe v. Penzato*, 10-CV-5154 (MEJ), 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (same).

Moreover, this case involves students who attend a strictly religious school that expressly prohibits pre-marital sex. Many of these students, including Plaintiff, seek entry into the clergy or religious-affiliated groups after graduation. As such, disclosure of their identities in connection with their extra-marital sexual activities risks exposing Plaintiff, as well as the unnamed students, to ridicule and even ostracization from their own religious community. See, e.g., *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ("[R]eligion is perhaps the quintessential[] private matter."). Thus, this case involves numerous facets of intensely personal and sensitive matters, warranting litigation by pseudonym.

15

**b. Disclosure of Plaintiff's Identity would Pose a Substantial Risk of Harm, Including the Very Damage Plaintiff Seeks to Avoid by Way of This Action.**

Although the issue at the heart of this case is Dordt's failure to follow its own policies and the requirements of Title IX, the subject matter of sexual misconduct and false accusations is a highly volatile issue in the public discourse right now. The revelation of Plaintiff's identity would result in significant, irreparable harm to Plaintiff, the exact type of which he seeks to avoid by the commencement of this lawsuit. Specifically, if Plaintiff were required to reveal his identity, any ultimate success in this matter would be negated by the disclosure of his name. Any public internet searches of his name would ultimately turn up results including this lawsuit and the false—yet damning—allegations of the accuser, as well as Dordt's finding of responsibility. In that regard, even if Plaintiff were to achieve his objective of removing the sanction from his academic records, potential future employers, educational institutions, and even future romantic partners would all have access to these allegations at their fingertips – all it takes is a google search.

The likelihood of being hired or accepted to a graduate institution of high caliber is almost nil when an applicant must contend with the social stigma associated with being found responsible and dismissed for sexual misconduct, regardless of whether the decision is ultimately overturned as the result of litigation. As one commentator has noted, employers "take a huge risk by hiring a former harasser. If I'm advising my client, I'm telling them not to make the hire unless they are convinced the allegations are false. And even in that case they are taking a risk." *See* Jon Hyman, Esq., *Sexual Harassment is the Hiring Scarlet Letter*, Workforce.com (Feb. 8, 2018), available at https://www.workforce.com/2018/02/08/sexual-harassment-hiring-scarlet-letter/ (recounting story of former professor who resigned amid accusations of sexual misconduct, left the country,

16

found new work in China, and was then petitioned by students at new university based on prior, unproven allegations).

Surely this Court can take judicial notice of the prolific rise of the #MeToo movement, which has created a sea change in the nation's views on sexual misconduct, and, more importantly, on the social, professional, and personal implications of being publicly accused of sexual assault. Social media is now regularly weaponized against men accused of misconduct, with online petitions and protests calling for their termination, resignation, and repudiation, oftentimes before the allegations are even tested in any kind of reliable, unbiased proceeding.

According to the New York Times, since the rise of #MeToo, "at least 200 prominent men have lost their jobs after public allegations of sexual harassment." Carlsen et al., *#MeToo Brought Down 200 Powerful Men. Nearly Half of Their Replacements are Women*, N.Y. Times, (Oct. 29, 2018), https://www.nytimes.com/interactive/2018/10/23/us/metoo-replacements.html. Notably, the list of 200 only represents individuals "who permanently lost their jobs or significant roles, professional ties or projects (e.g., concert tours, book deals) within the past year after publicly reported accusations of sexual misconduct," and does not include "cases of those put on temporary or indefinite leave." And, in the vast majority of the listed cases, the repercussions came on the basis of allegations *alone*, which the accused denied. *See also,* Brian Stelter and Tom Kludt, *NBC Fires Matt Lauer After Complaint About 'Inappropriate Sexual Behavior'*, CNN (Nov. 29, 2017), https://money.cnn.com/2017/11/29/media/matt-lauer/index.html?iid=EL (Accused male fired without formal finding); *CBS News Fires Charlie Rose After Sexual Misconduct Allegations*, CBS News (Sept. 23, 2018), https://www.cbsnews.com/news/charlie-rose-fired-cbs-news-sexual-misconduct-allegations/ (Accused male fired without formal finding).

Likewise, college students accused of sexual misconduct have faced intense backlash and harassment when their identities have been revealed, even when their cases were either not yet adjudicated, or they were found not responsible. *See, e.g.*, Mitchell Byars, *Protests at CU set for Monday as Student Charged in Rape*, Boulder Daily Camera (Mar. 14, 2019) https://www.dailycamera.com/2019/03/14/protests-at-cu-set-for-monday-as-student-charged-in-rape/ (University of Colorado students demanding school expel student *accused* of sexual assault; posters with the accused student's photo and the allegations posted on campus); Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times (Dec. 21, 2014) https://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html (student accused of sexual assault *and found not responsible* in university Title IX proceeding was "denounced as a rapist on fliers and in a rally in the university's quadrangle," had his "name . . . plastered on campus bathrooms and published in easily searchable articles," and had his photo posted on the internet by "detractors . . . as warnings to strangers"); Patrick Witt, *A Sexual Harassment Policy that Nearly Ruined My Life*, Boston Globe (Nov. 3, 2014), https://www.bostonglobe.com/opinion/2014/11/03/sexual-harassment-policy-that-nearly-ruinedlife/hY3XrZrOdXjvX2SSvuciPN/story.html (article written by Yale student accused of unspecified acts in an "informal" university proceeding, explaining that revelation of the allegations "cost me my reputation and credibility, the opportunity to become a Rhodes scholar, the full-time job offer I had worked so hard to attain, and the opportunity to achieve my childhood dream of playing in the NFL. I have had to address it with every prospective employer whom I've contacted, with every girl that I've dated since, and even with Harvard Law School during my admissions interview."). Similar outcomes have resulted from findings of responsibility. *See* Richard Adams, *Warwick University Says Rape Threat Pair Won't Return*, Guardian (Feb. 4,

18

2019) https://www.theguardian.com/education/2019/feb/05/warwick-university-says-threat-pair-wont-return (students found responsible for making rape threats successfully appealed initial ten-year suspension, resulting in protests by "[s]enior academics and heads of department," "a number of Warwick alumni contacted the university to express their dismay [and a] student protest meeting [being] planned," and "an online petition rapidly gained thousands of signatures" to ban the students); *see also* Cathy Young, *Exclusive: Brown University Student Speaks Out on What It's Like to Be Accused of Rape*, Daily Beast (June 8, 2014), https://www.thedailybeast.com/exclusive-brownuniversity-student-speaks-out-on-what-its-like-to-be-accused-of-rape (student found responsible for sexual assault in university proceeding and suspended for one year; accuser subsequently publicly identified the student, leading to public protests, national news stories, and televised commentary by a United States senator that the accused student "brutally raped" the complainant and "should be in jail, not with a one-year suspension").

In other words, the harm that Plaintiff faces should he be publicly identified in this matter could not possibly be ameliorated by an eventual adjudication in his favor: the existence and publication of the allegations alone would forever impact his life in concrete, detrimental, life-altering ways that go well beyond any sort of immaterial, low-level "embarrassment." *See Doe v. Alger*, 317 F.R.D. 37, 42 (W.D. Va. 2016) ("The court agrees with Doe that irreparable harm to his name is a relevant factor here and that it tips in favor of anonymity. If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag."). Indeed, in *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 622 (E.D. Va. 2016), not only was the plaintiff—a male university student found responsible for sexual misconduct—permitted to litigate by pseudonym, he ultimately won summary judgment against the university on the

specific grounds that the stigma associated with being found responsible for sexual assault, combined with the sanction imposed by the university, constituted a concrete injury:

> [P]laintiff's lost opportunity to continue with his post-secondary education, coupled with the possibility that he may be unable to pursue meaningful educational opportunities elsewhere while his name remains associated with sexual misconduct, inevitably affects plaintiff's professional prospects. . . . And *common sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a much more powerful stigma* than an adjudication of run-of-the-mill assault or vandalism.
>
> *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d at 622 (emphasis added).

*See also Doe v. Cummins*, 662 Fed. Appx. 437, 445 (6th Cir. 2016) (when plaintiff male university student was found responsible by his university for sexual assault, "the adverse disciplinary decision did, and continues to, impugn his reputation and integrity, thus implicating a protected liberty interest."). The fact that courts have recognized the stigma of a sexual assault adjudication as sufficiently damaging to constitute a legally cognizable harm serves to underscore Plaintiff's fear of disclosure in the instant matter as much more than a mere personal desire to avoid embarrassment.

Moreover, Plaintiff's status as an accused sexual assailant would also expose him to risks of physical harm. As other courts have noted, "it stands to reason that there are some persons who would seek to inflict physical or mental harm on Doe if they learned of his real name, especially in light of the ongoing national conversation about sexual misconduct on college campuses." *Alger*, 317 F.R.D. at 40 (granting motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in university Title IX proceeding, over defendants' objection that plaintiff "has not been targeted for violence to date [and] cannot name any individual friend or relative of Roe's who might potentially target him"); *see also Doe v. Virginia Polytechnic Inst. &*

20

*State Univ.*, Docket No. 18-CV-170, 2018 WL 5929647, at *3 (W.D. Va. Nov. 13, 2018) (granting

motion to proceed by pseudonym to male student plaintiff found responsible for sexual assault in

university Title IX proceeding, because identification "may put him at risk for physical or mental

harm"); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("[T]he Court finds that the

interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of

sensitive private information outweigh the public's need to know their names.").  The United States

District Court for the District of New Hampshire has astutely recognized:

> [T]hese potential harms are severe and reasonable. . . .  [S]ignificant
> in this case is plaintiff's argument that public disclosure will subject
> him to reputational damage and will impair his future educational
> and career prospects, regardless of the actual outcome of this action.
> Plaintiff cites other campus sexual-assault cases to show that the
> mere accusation that one has committed a sexual assault can subject
> the accused to lasting reputational damage and harassment, even
> where, as here, the accused is ultimately found not culpable of
> sexual assault.  Such a concern is only exacerbated in the Internet
> age, which can provide additional channels for harassment and will
> connect plaintiff's name to [the school's]'s findings and sanction
> forever, whether or not he is successful in this litigation.  . . .
> Plaintiff has a reasonable fear that, *whatever the outcome of the
> action, public identification will subject him to severe reputational
> harm and harassment*, and will defeat the very purpose of this
> litigation.
>
> *Doe v. Trustees of Dartmouth Coll.*, Docket No. 18-CV-040-LM,
> 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018) (emphasis added)
> (citations omitted).

*See also Doe v. Univ. of St. Thomas*, Docket No. 16-CV-1127, 2016 WL 9307609, at *2 (D. Minn.

May 25, 2016) ("Even if his lawsuit were successful and his claims of unfair treatment were

vindicated down the road—an outcome about which the Court offers no opinion of likelihood—

the complained-of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is

known. . . . [F]orcing Mr. Doe to proceed under his true name would guarantee a permanent label

as a sexual offender, discoverable with a simple Google search; that is arguably worse than the

reputational harm he complains of from the University's currently confidential disciplinary proceedings. This factor weighs heavily in favor of pseudonymous proceeding.").

Thus, the harm that Plaintiff fears if his name is revealed in this case is concrete, severe, and lasting, and would ultimately render any subsequent victory on the merits hollow, as the very damage he seeks to avoid by this lawsuit would be incurred as a result of the disclosure. In the current social climate, a mere allegation of sexual assault alone is enough to ruin a person's life and career. Plaintiff should not be forced to risk his entire professional future and personal reputation in order to have his case heard on the merits. His interest in privacy by far outweighs the public interest in open proceedings.

### c. The Suit is Challenging the Actions of a Partially Federally-Funded University.

With respect to this factor, courts recognize that "where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong[, because in] such circumstances the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights." *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). Plaintiff is suing Dordt, a partially federally-funded private university, along with its agents and employees. There is a strong public interest in vindicating the rights of male students at Dordt University, given Dordt's non-compliance with federal law and its own policies.

As one district court has noted, a private school and its employees "are neither governmental entities nor ordinary private parties. However, . . . the [school] 'is organized solely to perform an important, public service' and the [employee] is employed to assist in achieving the

[school]'s goals. Given the significant roles held by these defendants in their community, plaintiff's allegations . . . raise concerns affecting a larger association rather than the interest of an individual plaintiff." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (permitting plaintiff students to proceed by pseudonym against private school); *see also Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) (when a lawsuit "affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process.").

Thus, this factor weighs in favor of non-disclosure.

### d. Defendants Are Not Prejudiced by Allowing Plaintiff to Press His Claims Anonymously.

Permitting Plaintiff to appear in this matter as John Doe and precluding Defendants from revealing Plaintiff's identity in court filings or otherwise will not "prejudice[e] the opposing party's ability to litigate the case." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). In the instant case, Defendants are well aware of Plaintiff's identity. *See* Declaration of Adrienne Levy, Esq. ("Levy Decl.") ¶ 5, enclosed with this motion. As such, they are perfectly able to defend their case, as they may gather relevant evidence (the vast majority, if not all of which, is in Defendants' possession), conduct discovery, and formulate their defenses just as they would if Plaintiff were to proceed under his own name. Thus, "[o]ther than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). *See also Doe v. Grinnell Coll.*, No. 17-CV-00079 (RGE) (SBJ) (S.D. Iowa July 10, 2017), ECF No. 39 at *6-7.

Thus, this factor weighs in favor of non-disclosure.

**e. The Plaintiff Has Sought to Keep his Identity Confidential.**

"The extent to which the plaintiff's identity has been kept confidential may . . . affect the weight of the privacy interest," because the plaintiff's interest in anonymity throughout the litigation is stronger where he has sought to protect his anonymity prior to the litigation. *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). In the instant case, Plaintiff has done everything in his power to keep the matter of his disciplinary process confidential. The only people to whom Plaintiff has disclosed this matter include his legal counsel, immediate family, and a few very close friends whom Doe turned to for emotional support. *See* Levy Decl. ¶ 4. He has sought no publicity and made no public statements about the matter. *Id.* Moreover, due to the constraints of the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, Defendants are generally restricted from revealing Plaintiff's disciplinary records.

Thus, Plaintiff has done everything in his power to maintain anonymity, and this factor weighs in favor of non-disclosure.

**f. The Public's Interest in the Litigation is not Furthered by Requiring Plaintiff to Disclose His Identity, and There is a Weak Public Interest in Knowing Plaintiff's Identity.**

The primary public interest in the instant action is Dordt's handling of sexual assault allegations, its treatment of male students, whether its Title IX processes violate state and federal law, and whether there is a pattern of bias and discrimination against male students. As such, the matters at issue are purely legal – this case is not about a substantive determination of Roe's allegations. Plaintiff's identity in and of itself therefore has little to no relevance to the issues of public interest. For example, Plaintiff is not a public figure, nor a supervisory employee of the University, such that the public would have an interest in learning his specific identity. As such,

24

there is a weak public interest in learning Plaintiff's identity, and the public's interest in this matter

would not be furthered by disclosing Plaintiff's identity.  *See Kolko*, 242 F.R.D. at 195.  As the

Fifth Circuit has opined,

> The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself.  Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name.
>
> *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 574 (1980)).

*See also Doe v. Evans,* 202 F.R.D. 173, 176 (E.D. Pa. 2001) (protecting Plaintiff's identify

will not "impede the public's ability to follow the proceedings").  Thus, this factor weighs in favor

of non-disclosure.

### g.  Plaintiff Could Face Criminal Prosecution.

As cited by this court on prior occasions, one consideration for anonymity is whether

Plaintiff might be forced to disclose actions that could result in criminal prosecution.  *Heather K.*,

887 F. Supp. at 1255-56.  In the instant case, Plaintiff accepted responsibility for providing alcohol

to underage students, which could subject him to criminal prosecution.  *See* Iowa Code Annotated

§ 123.47.  Thus, this factor weighs in favor of anonymity.

### CONCLUSION

For the foregoing reasons, Plaintiff requests that his *Ex Parte* Motion to Proceed Under

Pseudonym and for Protective Order be granted in its entirety.  The interests of Defendants and/or

the public will not be harmed if Plaintiff's name is not revealed, whereas Plaintiff would be subject

to great risk of harm and prejudice if he is forced to disclose his identity at this time.

25

Dated: New York, New York
December 4, 2019

Respectfully submitted,

BABICH GOLDMAN, P.C.

By: /s/ David Goldman
David H. Goldmna, Esq.
501 SW 7th Street, Suite J
Des Moines, Iowa 50309
(515) 309-6850
dgoldman@babichgoldman.com

*and*

NESENOFF & MILTENBERG, LLP

By:/s/ Andrew T. Miltenberg
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Adrienne Levy, Esq.
(*Pro Hac Vice* motions forthcoming)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
alevy@nmllplaw.com

26