EXHIBIT
56

# REVISED SEXUAL HARASSMENT GUIDANCE: HARASSMENT OF STUDENTS BY SCHOOL EMPLOYEES, OTHER STUDENTS, OR THIRD PARTIES

## TITLE IX



January 2001

U.S. Department of Education
Office for Civil Rights

# PREAMBLE

## Summary

The Assistant Secretary for Civil Rights, U.S. Department of Education (Department), issues a new document (revised guidance) that replaces the 1997 document entitled "Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties," issued by the Office for Civil Rights (OCR) on March 13, 1997 (1997 guidance). We revised the guidance in limited respects in light of subsequent Supreme Court cases relating to sexual harassment in schools.

The revised guidance reaffirms the compliance standards that OCR applies in investigations and administrative enforcement of Title IX of the Education Amendments of 1972 (Title IX) regarding sexual harassment. The revised guidance re-grounds these standards in the Title IX regulations, distinguishing them from the standards applicable to private litigation for money damages and clarifying their regulatory basis as distinct from Title VII of the Civil Rights Act of 1964 (Title VII) agency law. In most other respects the revised guidance is identical to the 1997 guidance. Thus, we intend the revised guidance to serve the same purpose as the 1997 guidance. It continues to provide the principles that a school[1] should use to recognize and effectively respond to sexual harassment of students in its program as a condition of receiving Federal financial assistance.

## Purpose and Scope of the Revised Guidance

In March 1997, we published in the Federal Register "Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties." 62 FR 12034. We issued the guidance pursuant to our authority under Title IX, and our Title IX implementing regulations, to eliminate discrimination based on sex in education programs and activities receiving Federal financial assistance. It was grounded in longstanding legal authority establishing that sexual harassment of students can be a form of sex discrimination covered by Title IX. The guidance was the product of extensive consultation with interested parties, including students, teachers, school administrators, and researchers. We also made the document available for public comment.

Since the issuance of the 1997 guidance, the Supreme Court (Court) has issued several important decisions in sexual harassment cases, including two decisions specifically addressing sexual harassment of students under Title IX: Gebser v. Lago Vista Independent School District (Gebser), 524 U.S. 274 (1998), and Davis v. Monroe County Board of Education (Davis), 526 U.S. 629 (1999). The Court held in Gebser that a school can be liable for monetary damages if a teacher sexually harasses a student, an

---

[1] As in the 1997 guidance, the revised guidance uses the term "school" to refer to all schools, colleges, universities, and other educational institutions that receive Federal funds from the Department.

official who has authority to address the harassment has actual knowledge of the harassment, and that official is deliberately indifferent in responding to the harassment. In Davis, the Court announced that a school also may be liable for monetary damages if one student sexually harasses another student in the school's program and the conditions of Gebser are met.

The Court was explicit in Gebser and Davis that the liability standards established in those cases are limited to private actions for monetary damages. See, e.g., Gebser, 524 U.S. 283, and Davis, 526 U.S. at 639. The Court acknowledged, by contrast, the power of Federal agencies, such as the Department, to "promulgate and enforce requirements that effectuate [Title IX's] nondiscrimination mandate," even in circumstances that would not give rise to a claim for money damages. See, Gebser, 524 U.S. at 292.

In an August 1998 letter to school superintendents and a January 1999 letter to college and university presidents, the Secretary of Education informed school officials that the Gebser decision did not change a school's obligations to take reasonable steps under Title IX and the regulations to prevent and eliminate sexual harassment as a condition of its receipt of Federal funding. The Department also determined that, although in most important respects the substance of the 1997 guidance was reaffirmed in Gebser and Davis, certain areas of the 1997 guidance could be strengthened by further clarification and explanation of the Title IX regulatory basis for the guidance.

On November 2, 2000, we published in the Federal Register a notice requesting comments on the proposed revised guidance (62 FR 66092). A detailed explanation of the Gebser and Davis decisions, and an explanation of the proposed changes in the guidance, can be found in the preamble to the proposed revised guidance. In those decisions and a third opinion, Oncale v. Sundowner Offshore Services, Inc. (Oncale), 523 U.S. 75 (1998) (a sexual harassment case decided under Title VII), the Supreme Court confirmed several fundamental principles we articulated in the 1997 guidance. In these areas, no changes in the guidance were necessary. A notice regarding the availability of this final document appeared in the Federal Register on January 19, 2001.

## Enduring Principles from the 1997 Guidance

It continues to be the case that a significant number of students, both male and female, have experienced sexual harassment, which can interfere with a student's academic performance and emotional and physical well-being. Preventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn. As with the 1997 guidance, the revised guidance applies to students at every level of education. School personnel who understand their obligations under Title IX, e.g., understand that sexual harassment can be sex discrimination in violation of Title IX, are in the best position to prevent harassment and to lessen the harm to students if, despite their best efforts, harassment occurs.

One of the fundamental aims of both the 1997 guidance and the revised guidance has been to emphasize that, in addressing allegations of sexual harassment, the good judgment and common sense of teachers and school administrators are important elements of a response that meets the requirements of Title IX.

A critical issue under Title IX is whether the school recognized that sexual harassment has occurred and took prompt and effective action calculated to end the harassment, prevent its recurrence, and, as appropriate, remedy its effects. If harassment has occurred, doing nothing is always the wrong response. However, depending on the circumstances, there may be more than one right way to respond. The important thing is for school employees or officials to pay attention to the school environment and not to hesitate to respond to sexual harassment in the same reasonable, commonsense manner as they would to other types of serious misconduct.

It is also important that schools not overreact to behavior that does not rise to the level of sexual harassment. As the Department stated in the 1997 guidance, a kiss on the cheek by a first grader does not constitute sexual harassment. School personnel should consider the age and maturity of students in responding to allegations of sexual harassment.

Finally, we reiterate the importance of having well- publicized and effective grievance procedures in place to handle complaints of sex discrimination, including sexual harassment complaints. Nondiscrimination policies and procedures are required by the Title IX regulations. In fact, the Supreme Court in Gebser specifically affirmed the Department's authority to enforce this requirement administratively in order to carry out Title IX's nondiscrimination mandate. 524 U.S. at 292. Strong policies and effective grievance procedures are essential to let students and employees know that sexual harassment will not be tolerated and to ensure that they know how to report it.

## Analysis of Comments Received Concerning the Proposed Revised Guidance and the Resulting Changes

In response to the Assistant Secretary's invitation to comment, OCR received approximately 11 comments representing approximately 15 organizations and individuals. Commenters provided specific suggestions regarding how the revised guidance could be clarified. Many of these suggested changes have been incorporated. Significant and recurring issues are grouped by subject and discussed in the following sections:

### Distinction Between Administrative Enforcement and Private Litigation for Monetary Damages

In Gebser and Davis, the Supreme Court addressed for the first time the appropriate standards for determining when a school district is liable under Title IX for money damages in a private lawsuit brought by or on behalf of a student who has been sexually harassed. As explained in the preamble to the proposed revised guidance, the Court was explicit in Gebser and Davis that the liability standards established in these cases are limited to private actions for monetary damages. See, e.g., Gebser, 524 U.S. at 283, and Davis, 526 U.S. at 639. The Gebser Court recognized and contrasted lawsuits for money damages with the incremental nature of administrative enforcement of Title IX. In Gebser, the Court was concerned with the possibility of a money damages award against a school for harassment about which it had not known. In contrast, the process of administrative enforcement requires enforcement agencies such as OCR to make schools

aware of potential Title IX violations and to seek voluntary corrective action before pursuing fund termination or other enforcement mechanisms.

Commenters uniformly agreed with OCR that the Court limited the liability standards established in Gebser and Davis to private actions for monetary damages. See, e.g., Gebser, 524 U.S. 283, and Davis, 526 U.S. at 639. Commenters also agreed that the administrative enforcement standards reflected in the 1997 guidance remain valid in OCR enforcement actions.[2] Finally, commenters agreed that the proposed revisions provided important clarification to schools regarding the standards that OCR will use and that schools should use to determine compliance with Title IX as a condition of the receipt of Federal financial assistance in light of Gebser and Davis.

### Harassment by Teachers and Other School Personnel

Most commenters agreed with OCR's interpretation of its regulations regarding a school's responsibility for harassment of students by teachers and other school employees. These commenters agreed that Title IX's prohibitions against discrimination are not limited to official policies and practices governing school programs and activities. A school also engages in sex-based discrimination if its employees, in the context of carrying out their day-to-day job responsibilities for providing aid, benefits, or services to students (such as teaching, counseling, supervising, and advising students) deny or limit a student's ability to participate in or benefit from the schools program on the basis of sex. Under the Title IX regulations, the school is responsible for discrimination in these cases, whether or not it knew or should have known about it, because the discrimination occurred as part of the school's undertaking to provide nondiscriminatory aid, benefits, and services to students. The revised guidance distinguishes these cases from employee harassment that, although taking place in a school's program, occurs outside of the context of the employee's provision of aid, benefits, and services to students. In these latter cases, the school's responsibilities are not triggered until the school knew or should have known about the harassment.

One commenter expressed concern that it was inappropriate ever to find a school out of compliance for harassment about which it knew nothing. We reiterate that, although a school may in some cases be responsible for harassment caused by an employee that occurred before other responsible employees of the school knew or should have known about it, OCR always provides the school with actual notice and the opportunity to take appropriate corrective action before issuing a finding of violation. This is consistent with the Court's underlying concern in Gebser and Davis.

Most commenters acknowledged that OCR has provided useful factors to determine whether harassing conduct took place "in the context of providing aid, benefits, or services." However, some commenters stated that additional clarity and examples regarding the issue were needed. Commenters also suggested clarifying

---

[2] It is the position of the United States that the standards set out in OCR's guidance for finding a violation and seeking voluntary corrective action also would apply to private actions for injunctive and other equitable relief. See brief of the United States as Amicus Curiae in Davis v. Monroe County.

iv

Case 5:19-cv-04082-CJW-KEM    Document 49-7    Filed 03/18/22    Page 5 of 5

App. 430